UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFREY M. MOLL and MONA
LYNN PIGG,

    Plaintiffs,

vs.

CLASS REPRESENTATION
Case No: 3:05-CV-00160-RV-MD

ALLSTATE FLORIDIAN
INSURANCE COMPANY,

    Defendant.
_____/

## PLAINTIFFS' MOTION & MEMORANDUM TO REMAND

### MOTION FOR REMAND

PLAINTIFFS, pursuant to Fed. R. Civ. P. 7, N.D. Fla. Loc. R. 7.1, and 28 U.S.C. § 1447, move this Court for an order remanding this action to the Circuit Court in and for Escambia County, Florida.

1. This action originally was filed in state court and was removed by Defendant to this Court. The complaint alleges that Defendant Allstate Floridian Insurance Company ("Allstate Floridian") has its principal place of business ("PPB") in Florida. (Compl. ¶ 9.)

2. Allstate Floridian alleges that it is incorporated and maintains its PPB in Illinois. (Notice of Removal ¶ 6.)

3. As demonstrated in the accompanying memorandum, Allstate Floridian's PPB is in Florida, and therefore it is a citizen of the State of Florida for diversity purposes. 28 U.S.C. § 1332(c)(1).

4. A district court "shall decline to exercise jurisdiction" over a diversity-based class action when: (i) "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;" (ii) at least one defendant (here, Allstate Floridian) is a defendant "from whom significant relief is sought by members of the plaintiff class;" (iii) that defendant's alleged conduct "forms a significant basis for the claims asserted by the proposed plaintiff class;" (iv) that defendant "is a citizen of the State in which the action was originally filed;" (v) "principal injuries resulting from the alleged conduct or any related conduct . . . were incurred in the State in which the action was originally filed;" and (vi) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A).

5. Both named class representatives are citizens of the State of Florida. (Compl. ¶¶ 5-6.) Given that this class action pertains to residential property claims arising from hurricane losses exclusively within the State of Florida, it is expected that greater than two-thirds of the members of the proposed plaintiff class are citizens of the State of Florida. Significant relief is sought from Allstate Floridian and the

principal injuries resulting from its alleged misconduct were incurred in Florida.  No similar class action has been brought against Allstate Floridian.  As explained in the accompanying memorandum of law, it would be Allstate Floridian's burden to prove otherwise, though Plaintiffs anticipate that Allstate Floridian will concede these points.  It follows that if Allstate Floridian's PPB is within Florida, i.e., if Allstate Floridian is a Florida citizen, then this Court "shall" remand this action pursuant to 28 U.S.C. § 1332(d)(4)(A).

6.   Likewise, a district court "shall decline to exercise jurisdiction" over a diversity-based class action when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).

7.   It is expected that two-thirds or more of the members of the proposed class are citizens of the State of Florida.  Plaintiffs believe Allstate Floridian will concede this point.  As the only Defendant in this action, Allstate Floridian is by definition a "primary defendant."  It follows that if Allstate Floridian's PPB is within Florida, i.e., if Allstate Floridian is a Florida citizen, then this Court "shall" remand this action pursuant to 28 U.S.C. § 1332(d)(4)(B).

8.   Defendant has failed to meet its burden of proving that its PPB is located in Northbrook, Illinois.  Allstate Floridian's answers to Plaintiffs' jurisdictional interrogatories and publicly available information make clear that Allstate Floridian's PPB is within the State of Florida.

9. Because Allstate Floridian has failed to sustain its burden of proving that it is not a Florida citizen, remand not only is appropriate, but is required pursuant to 28 U.S.C. §§ 1332(d)(4)(A) and (B).

10. Based upon this reasoning and the authorities set out in Plaintiffs' accompanying memorandum, Plaintiffs move this Court for an order remanding this action to the Circuit Court in and for Escambia County, Florida.

11. Plaintiffs' counsel has conferred with defense counsel regarding the relief sought in this motion. Defendant objects to the relief sought by this motion.

## MEMORANDUM IN SUPPORT

**I.  There is but one issue: Allstate Floridian's PPB.**

This action is governed by the new Class Action Fairness Act of 2005 ("CAFA"). Remand is required (that is to say, jurisdiction is lacking) under two provisions of 28 U.S.C. § 1332 as amended by CAFA. The first is 28 U.S.C. § 1332(d)(4)(A), which requires remand when the following conditions exist:

(i)   "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of [Florida];" (§ 1332(d)(4)(A)(i)(I))

(ii)  Allstate Floridian is a defendant "from whom significant relief is sought by members of the plaintiff class;" (§ 1332(d)(4)(A)(i)(II)(aa))

(iii) Allstate Floridian's alleged conduct "forms a significant basis for the claims asserted by the proposed plaintiff class;" (§ 1332(d)(4)(A)(i)(II)(bb));

(iv)  Allstate Floridian "is a citizen of [Florida];" (§ 1332(d)(4)(A)(i)(II)(cc))

    (v)    "principal injuries resulting from the alleged conduct or any related conduct . . . were incurred in [Florida];" (§ 1332(d)(4)(A)(i)(III))

    (vi)    during the 3-year period preceding the filing of this action, no other class action has been filed asserting the same or similar factual allegations against [Allstate Floridian] on behalf of the same or other persons." (§ 1332(d)(4)(A)(ii)).

Plaintiffs contend—and believe Allstate Floridian will concede—that of these six conditions set out in § 1332(d)(4)(A), only the fourth is in dispute: whether Allstate Floridian is a Florida citizen.[1]

The second provision requiring remand is 28 U.S.C. § 1332(d)(4)(B), which forbids a district court to exercise diversity jurisdiction if: "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."[2] As Allstate Floridian is the only defendant in this case, it obviously is a "primary defendant."

Hence, under both § 1332(d)(4)(A) and § 1332(d)(4)(B), only Allstate Floridian's

---

[1] This class action pertains to Allstate Floridian's handling of residential hurricane claims filed during 2004. Every insured residential property is within the State of Florida. Although some residential property owners inevitably will reside out of state, it is highly unlikely that one-third of owners do so. It is undisputed that Plaintiffs seek significant relief from Allstate Floridian. Only Allstate Floridian's misconduct is at issue, so naturally it forms a "significant basis" for the relief sought. The injuries suffered are economic injuries suffered almost exclusively by Florida citizens with respect to Florida residential properties. Plaintiffs are aware of no similar class actions having been filed against Defendant (and Defendant has advised of none). Hence, only Allstate Floridian's citizenship remains at issue.

[2] Subsection (d)(4)(A) requires that "greater than two-thirds" of putative class members reside in the forum state while subsection (d)(4)(B) speaks of "two-thirds or more." There is no practical difference between the two in this case.

citizenship remains at issue.  If Allstate Floridian is a Florida citizen, remand is mandatory.[3]

Under well-settled jurisdictional principles, Allstate Floridian is for diversity purposes deemed a citizen "of any State by which it has been incorporated and of the State where it has its principal place of business . . . ."  28 U.S.C. § 1332(c)(1).  *See also Rolling Greens MHP, L.P. v. Comcast SCH Holdings*, 374 F.3d 1020, 1022 n.1 (11th Cir. 2004).  Allstate Floridian is incorporated in Illinois.  (Notice of Removal ¶ 6.)  The distilled (and dispositive) issue thus is whether Allstate Floridian's PPB is in Illinois, as it contends, or whether it is in Florida, as Plaintiffs contend.  If it is in Illinois, federal jurisdiction exists.  If it is in Florida, remand is required under subsections 1332(d)(4)(A) and (B).

### II. **Allstate Floridian bears the burden to prove jurisdiction against a presumption in favor of remand.**

Allstate Floridian, as the removing party, has the burden of proving that diversity jurisdiction exists. *See, e.g.*, *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *see also Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975) ("The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof.").

---

[3] Plaintiffs concede that the amount in controversy satisfies the aggregate federal jurisdictional minimum of $5,000,000.00.  *See* 28 U.S.C. § 1332(d)(6).

Removal jurisdiction raises significant federalism concerns and removal statutes must be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 872, 85 L. Ed. 1214 (1941); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). There is a "presumption in favor of remand" and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*

### III. **Allstate Floridian maintains its PPB in Florida.**

Defendant's Notice of Removal avers that Allstate Floridian "is incorporated in Illinois and has its principal place of business located in Northbrook, Illinois." (Notice of Removal ¶ 6.) In support of this contention, Defendant points out that the Illinois Director of Insurance has never approved it to have a PPB outside of Illinois and the Florida Department of State "recognizes" it as a foreign corporation with its PPB in Illinois. (*Id.*) Neither of these grounds is determinative.

The Eleventh Circuit looks to the total activity of a corporation to determine its PPB. *See Vareka Inves., N.V. v. Am. Inv. Props.*, 724 F.2d 907, 909-10 (11th Cir. 1984). According to the *Vareka* court, "[t]his analysis incorporates both the 'place of activities' test (focus on production or sales activities), and the 'nerve center' test (emphasis on the locus of the managerial and policymaking functions of the corporation)." *Id.* at 910 (citing *Toms v. Country Quality Meats, Inc.*, 610 F.3d 313 (5th Cir. 1980)). Generally speaking, "the legislative history of the statute supports the conclusion that emphasis typically should be placed on the locus of operations

rather than where policymaking functions are carried out." C. Wright, A. Miller & E. Cooper, 13B *Federal Practice & Procedure* § 3625 (2005).

Attached as Exhibit A to this motion are Allstate Floridian's answers to Plaintiffs' jurisdictional interrogatories. Allstate Floridian's responses reveal the following:

- ➢ Allstate Floridian is a subsidiary of a subsidiary of Allstate Insurance Company, an Illinois corporation. But Allstate Floridian is separately capitalized. (Def. Ans. to Jursid. Interrogs. No. 1.)

- ➢ Allstate Floridian has fifteen officers, one of whom resides in Florida. Of its nine-member board, eight members reside in Illinois; one resides in Florida. During the past two years, 13 of its board meetings were held in Illinois while two were held in Florida. Its corporate records are maintained in Illinois. Its bank accounts are located neither in Florida nor in Illinois. (Def. Ans. to Jursid. Interrogs. No. 2, 10, 13, 14 & 16.)

- ➢ Allstate Floridian offers property insurance *only* for property located within the State of Florida. (Def. Ans. to Jursid. Interrogs. No. 3 & 4.)

- ➢ *One hundred percent* of Allstate Floridian's annual gross profits and losses relate to property located within the State of Florida. (Def. Ans. to Jursid. Interrogs. No. 6.)

- ➢ In 2004, Allstate Floridian opened 307,753 claims and distributed $1,138,575,896 in claims payments. *Every claim opened* and *every penny paid* related to property located within the State of Florida. (Def. Ans. to Jursid. Interrogs. No. 1.)

- ➢ Allstate Floridian advertises *only* in Florida. (Def. Ans. to Jursid. Interrogs. No. 15.)

- ➢ Allstate Floridian is not reinsured by any other Allstate entity. (Def. Ans. to Jursid. Interrogs. No. 11.)

- ➢ Only three other Allstate entities provide property insurance coverage within the State of Florida. *Allstate Floridian reinsures all three.* Allstate Floridian does not reinsure any property located outside of Florida. (Def. Ans. to Jursid. Interrogs. No. 5 & 20.)

> ➢ Allstate Floridian has no direct employees. (Def. Ans. to Jursid. Interrogs. No. 9 & 12.) Given that *every one* of the 300,000+ claims filed in 2004 related to property situated in Florida, one may infer that the bulk of adjusting work was carried out in Florida.[4]

In sum, then, Allstate Floridian's interrogatory answers suggest a skeleton crew of 14 officers and 8 board members (with possible overlap between the two) operating out of Northbrook, Illinois. It holds most of its board meetings in Illinois and maintains its corporate records there. This admittedly demonstrates that at least some if not most managerial and policymaking functions are carried out in Illinois. But some of those functions are carried out in Florida too, as demonstrated by the presence of a corporate board member and officer in Florida as well as the convening of at least one annual meeting in Florida each year. Hence, *some* of Allstate Floridian's managerial and policymaking ("nerve center") functions occur in Florida.

Added to the balance is that *all* of Allstate Floridian's production and sales ("place of activities") functions are Florida-based. It is a separately capitalized, Florida-based company that insures *only* Florida properties. It processed more than 300,000 claims

---

[4] Plaintiffs directed jurisdictional interrogatories to the question of whether Allstate Floridian's "employees" worked primarily in Florida or elsewhere during 2004, asking that its response "provide[] the Court a fair reflection of the general AFIC workforce located within Florida versus the general AFIC workforce located outside of Florida." (Pltfs. Jursid. Interrogs. No. 9.) Defendant responded in the strictest and most literal fashion by stating that it has no employees. While this was a permissible response to the interrogatory as phrased, it creates no record for this Court on the issue of how many persons worked during 2004 on behalf of Allstate Floridian within Florida versus how many worked on its behalf outside of Florida. Again, given the staggering number of claims Allstate Floridian handled during 2004, one must inescapably conclude that thousands of adjusters worked on its behalf within Florida in order to assess and process those claims.

in 2004 with more than 1.1 *billion* dollars in claims payments—*every penny of which related to Florida properties*.  By its own admission, Allstate Floridian does not derive a single dollar of profit or suffer any loss that does not relate to Florida properties.  Of the three other Allstate entities who insure property within Florida, Allstate Floridian reinsures all three.

These conclusions are borne out not only by Allstate Floridian's discovery responses, but by publicly available information concerning the company.  In the September 9, 2004, edition of the "Allstate Floridian News," presumably distributed to its insureds, Allstate Floridian Insurance Company cautioned readers:

> Please note:  In Florida, property insurance products are available *exclusively from Allstate Floridian Insurance Company and Allstate Floridian Indemnity Company, which are separate and distinct companies from each other and from other companies in the Allstate group*, including, for example, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company.

*Allstate Floridian Ins. Co. News* (Sep. 9, 2004) (emphasis added), publicly available at: *http://www.flains.org/public/allstatemru99.pdf*.  It bears keeping mind here that the Defendant reinsures Allstate Floridian Indemnity Company.

Likewise, Allstate's website contains a disclaimer noting that "In Florida, property insurance products are sold only by Allstate Floridian Insurance Company and Allstate Floridian Indemnity Company, Home Office: St. Petersburg, Florida." *Allstate Home Page*, publicly available at: *https://www.accessallstate.com/Anon/ PrivacyPolicy.aspx?Login=YES*.

10

According to the 2004 Florida Office of Insurance Regulation Annual Report, Allstate Floridian Insurance Company accounted for 9.67% of the market share in homeowner's direct-written premiums (more than $372 million in premiums) during 2003. *Fla. Office of Ins. Reg. 2004 Annual Report* at 131, publicly available at: *http://www.fldfs.com/annualreport/2004annreport.pdf*.

Allstate Floridian claims that its PPB is located in Illinois. Yet in 2003 it collected nearly a half-*billion* dollars in premiums for insuring *only* Florida properties, representing nearly 10% of the entire Florida homeowners' insurance market. In 2004 it processed more than 300,000 claims and distributed more than 1.1 *billion* dollars in claim payments relating *only* to Florida properties. The company's "home office" is in St. Petersburg, Florida. The company's profits and losses are related *only* to Florida properties. And one may infer that during 2004, thousands of adjusters were estimating hurricane losses to hundreds of thousands of Florida homes—homes belonging to the very people who will be class members in this case.

This is particularly important under the Eleventh Circuit's total activities test for, as a general rule, "the principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations." *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 409-10 (5th Cir. 1987) (cited with approval in *Sweat Pea Marine, Ltd. v. APJ Marine, Inc.*, 2005 WL 1349314, at *3 (11th Cir. 2005) for the inverse proposition discussed in *J.A. Olson* that the "nerve center" of a corporation with "far flung operations" generally

11

will be determinative of PPB). This principle was enunciated recently as follows:

> The "nerve center" [managerial/policymaking] test is applied when a corporation has varied activities which are carried on in different states. In such situations, the nerve center, or corporate offices, will be the principal place of business at which a corporation does business; the corporation's activities are dispersed to the point that no place in which the corporation conducts operations or activities is principal. *When a corporation has its executive offices in one state and its physical operation wholly or predominantly in another state, the principal place of business is the state where the physical operations are conducted.*

*TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1316 (M.D. Fla. 2002) (citing *Kelly v. U.S. Steel Corp.*, 284 F.2d 850 (3d Cir. 1960)) (emphasis added); *see also Kelly*, 284 F.2d at 854 ("[I]t is the activities rather than the occasional meeting of policy-making Directors which indicate the principal place of business."). This is precisely the situation presented here. Allstate Floridian's corporate headquarters are located in Illinois (though not all managerial and policymaking functions occur there), while the bulk if not the entirety of its billion-dollar operations are Florida-based.

### IV. Conclusion: Allstate Floridian is a Florida citizen and remand of this action is required.

Were one to ignore the policies Allstate Floridian has written in Florida, it would have not a single insured. Were one to ignore the profits Allstate Floridian earned in relation to Florida properties, it would have no profits. Were one to ignore the advertising Allstate Floridian undertakes in Florida, it would not advertise. Were one to ignore the claims Allstate Floridian processed in Florida, it would have had no claims. Were one to ignore the claims payments Allstate Floridian made in Florida

last year, it would have made no claims payments.  Were one to ignore the Florida companies Allstate Floridian reinsures, it would reinsure no one.  The presence of a handful of company executives in Illinois cannot outweigh Allstate Floridian's pervasive presence in the Florida insurance market and the exclusively "Floridian" foundation for its business.  *Some* of its managerial and policymaking functions are carried out in Florida; *all* of its sales and production activities are Florida-based.

   Given these facts, one must conclude that Allstate Floridian's PPB is, as its name suggests, Floridian; hence, it is a Florida citizen for diversity purposes.  If there are any doubts in this regard, those doubts must be "resolved in favor of remand to state court" given the "presumption in favor of remand" governing this Court's inquiry.  *Univ. of S. Ala.*, 168 F.3d at 411.  That being the case, diversity jurisdiction does not exist and remand is required pursuant to 28 U.S.C. §§ 1332(d)(4)(A) and (B).  Plaintiffs accordingly seek an order from this Court remanding this Florida-based action by Florida citizens against a Florida company back to the Florida state court in which it originally was filed.

s/Matthew D. Schultz
MATTHEW D. SCHULTZ
Fla. Bar No. 640328
Levin, Papantonio, Thomas, Mitchell,
   Echsner & Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
(850) 435-7000
Email: mschultz@levinlaw.com
Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished by notice of electronic filing to Harold R. Mardenborough, Jr., McFarlain & Cassedy, P.A., 305 S. Gadsden St., Tallahassee, FL 32301 and by U.S. mail to Robert H. King, Jr., Sonnenschein, Nath & Rosenthal, 8000 Sears Tower, 233 S. Wacker Dr., Chicago, IL 60606.

This the 8th day of July, 2005.

                                                s/Matthew D. Schultz
                                                MATTHEW D. SCHULTZ
                                                Fla. Bar No. 640328
                                                Levin, Papantonio, Thomas, Mitchell,
                                                     Echsner & Proctor, P.A.
                                                316 South Baylen Street, Suite 600
                                                Pensacola, FL 32502
                                                Phone:  (850) 435-7000
                                                Fax:  (850) 436-61412
                                                Email: mschultz@levinlaw.com
                                                Attorneys for Plaintiffs