IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| JEFFREY M. MOLL and <br> LYNN PIGG, each individually and on <br> behalf of all others similarly situated, <br> <br> Plaintiffs, <br> <br> v. <br> <br> ALLSTATE FLORIDIAN <br> INSURANCE COMPANY, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CLASS REPRESENTATION <br> ) Case No. 3:05-CV-00160-RV-MD <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### Introduction

Plaintiffs' Motion to Remand ("Plaintiffs' Motion") essentially admits that defendant Allstate Floridian Insurance Company's ("AFIC") "nerve center" -- the place where the overwhelming majority of its officers and directors are located and where most policymaking occurs -- is located in Illinois. (Plaintiffs' Motion, p. 9.) Plaintiffs argue that remand is required because allegedly all of AFIC's "production and sales ('place of activities') functions are Florida-based." From this premise, plaintiffs assert that AFIC's principal place of business ("PPB") is in Florida, meaning that diversity jurisdiction is lacking. (*Id.*) Plaintiffs' argument, however, betrays a fundamental misunderstanding of the insurance business and the "total activities" test employed by the Eleventh Circuit to determine a corporation's PPB.

Plaintiffs' Motion assumes that simply because the property insured by AFIC is located in Florida, all of its "production and sales" activities occur there. But as shown more fully below, an insurance company's "total activities" do not necessarily take place where the insured property is located. While it is certainly true that some sales activities and claims handling occur

in Florida, AFIC business activities occur in numerous locations, but are overseen and controlled from AFIC's "nerve center" in Northbrook, Illinois. Over 44,000 of AFIC's policyholders have billing addresses outside of Florida. AFIC's policyholders obtain policy information, make changes to their policies and submit claims by calling persons acting on AFIC's behalf at Allstate Insurance Company service centers located in North Carolina, Ohio, Illinois, Texas, California and India. AFIC's underwriting and pricing policies are made in Illinois. The policy forms are all printed in, and sent from, Illinois. All marketing materials are created in Illinois. AFIC maintains bank accounts located in New York, North Carolina and California. Investment and reinsurance decisions are made in Illinois. Claims handling policies and procedures are developed in Illinois. Filings with the Florida Department of State confirm that the "principle address" and "mailing address" of AFIC is in Illinois. Indeed, because AFIC is incorporated in Illinois, it is not permitted by statute to have its principal place of business outside of Illinois without the express permission of the Illinois Department of Insurance, which has not issued such permission.

In short, without AFIC's business activities that occur outside Florida, AFIC could not market or write any insurance policies, or generate any profits. As shown more fully below, under the "total activity" test, AFIC's principal place of business ("PPB") is in Illinois. This Court therefore has diversity jurisdiction over this matter, and Plaintiffs' Motion should be denied.

**FACTUAL BACKGROUND**

Like many insurance companies, AFIC's activities are not limited to the location of the property that it insures. AFIC engages in a multitude of business activities, including underwriting, pricing, banking, investment, regulatory compliance, marketing, sales and claims

handling. As explained more fully below, although AFIC's corporate headquarters are located in Illinois where the vast majority of its officers and directors reside and where its business policies are promulgated, its business activities take place in locations all across the country, including Illinois, Ohio, Texas, North Carolina and Florida.

  **A.**  **AFIC's Corporate Headquarters Are Located in Illinois Where The Bulk of Its Directors and Officers Reside and Where It Maintains Its Corporate Records.**

AFIC was incorporated as an Illinois corporation in 1996. (Stouffer Dec., ¶ 3.) It is a wholly-owned subsidiary of Allstate Holdings, LLC, a Delaware corporation, which is a wholly-owned subsidiary of Allstate Insurance Company, an Illinois corporation whose PPB is in Northbrook, Illinois. (*Id.*) AFIC has fifteen officers, fourteen of whom reside in Illinois and one of whom resides in Florida. (AFIC's Interrogatory Response No. 10.) AFIC is run by its nine member Board of Directors, eight of whom reside in Illinois, and one of whom resides in Florida. (*Id.*, at No. 2; Stouffer Dec., p 8.) In 2003 and 2004, AFIC's Board of Directors met 13 times; all such meetings, except two, were in Northbrook, Illinois. (AFIC's Interrogatory Response No. 13.)

AFIC has no employees in Florida or elsewhere. (Stouffer Dec., ¶ 8.) Instead, AFIC uses Allstate employees to perform services on its behalf pursuant to an agreement between AFIC and Allstate that provides that the costs associated with Allstate employees who provide services for AFIC will be paid for by AFIC. (*Id.*) Allstate employees performing services on behalf of AFIC in Florida or elsewhere follow directives and guidelines generated by AFIC in Illinois. (*Id.*, ¶ 9.)

AFIC maintains its corporate records in Northbrook, Illinois, and the address listed on its most recently filed federal and Florida tax returns is a post office box in Northbrook, Illinois. (AFIC Interrogatory Response No. 14; Gardner Dec., ¶¶ 3, 7.) The Illinois Insurance Code, 215

ILCS 5/8, requires that the PPB of any insurance company organized under Illinois law shall be in Illinois, unless the Illinois Director of Insurance has approved otherwise. The Illinois Director of Insurance has not approved a non-Illinois location for AFIC's PPB. (*Id.*, ¶ 6.)[1]

**B. AFIC's Banking Relationships Are Located in North Carolina, New York and California and Payments from Customers are Received in Texas.**

AFIC uses bank accounts located in North Carolina, New York and California. (AFIC Interrogatory Response. No. 16.) It maintains no bank accounts or payroll functions in Florida. (*Id.*, No. 17.) AFIC's customers send their premium payments to an address in Texas. (Stouffer Dec., ¶ 21.)

**C. AFIC Underwriting and Sales Functions Occur in Several Locations.**

As part of its business, Allstate must determine the amount it will charge customers for insurance coverage based on numerous factors. (Stouffer Dec., ¶ 14.) All such pricing and rate decisions for AFIC are made in Northbrook, Illinois. (*Id.*) AFIC must also set underwriting standards, which are used to determine what properties it will agree to insure. (*Id.*, ¶ 15.) AFIC's underwriting standards are promulgated in Illinois. (*Id.*) Similarly, AFIC's reinsurance decisions are made by AFIC's reinsurance committee, which contains seven members, all of whom reside in Illinois. (*Id.*, ¶ 18.)

AFIC insurance policies are sold either by insurance agents, through an Allstate Insurance Company Customer Information Center ("CIC") 800 number, or over the internet. (Stouffer Dec., ¶ 10.) Allstate has two CICs nationwide. (Wojtaszek Dec., ¶ 7.) They are

---

[1] It is true, as plaintiffs state, that Allstate Insurance Company's web-site lists a "home office: St. Petersburg, Florida" for AFIC and Allstate Floridian Indemnity Company. (Pls. Motion, p. 10.) AFIC does maintain an administrative office in St. Petersburg, and utilizes Allstate Insurance Company employees, pursuant to an internal company cost reimbursement agreement, to review policy applications and perform other administrative functions from that location on behalf of AFIC. (Stouffer Dec., ¶ 11.) AFIC's president's office is also located in St. Petersburg. (*Id.*)

located in Illinois and North Carolina. (*Id.*) The CICs are responsible for handling inbound calls from customers or potential customers that relate to customer inquiries, sales, endorsement changes, billing and payment issues and general policy maintenance issued for various Allstate related entities, including AFIC. (*Id.*) Calls involving routine billing and payment issues, will be routed to outside call centers maintained by third-party vendors located in California or India. Between January 1 and March 31, 2005, 23% of the inbound calls to the CICs that originated in Florida were handled by the Illinois CIC, 23% were handled by the North Carolina CIC, 51% were handled by the vendor in California and 3% were handled by the vendor in India. (*Id.,* at ¶ 10.)

To the extent that AFIC advertises, such advertisements are bought and placed from Northbrook, Illinois. (AFIC's Interrogatory Response No. 15.)

### D. AFIC's Policies Are Produced in Illinois.

All decisions regarding the policy language for AFIC's policies are made in Illinois. (Stouffer Dec., ¶ 16.) AFIC policies are printed and mailed from Illinois. (*Id.*, ¶ 20.)

### E. AFIC Claims Handling Functions Occur in Several Locations And Involve Adjusters Who Reside In Florida and Elsewhere.

AFIC policies and procedures regarding claims handling and coverage issues are generated in Northbrook, Illinois. (Stouffer Dec., ¶ 17.) AFIC policyholders can report claims in three ways: (a) to their insurance agent, (b) by calling an Allstate Insurance Company Customer Service Center ("CSC") 800 number, or (c) by using the internet. (Kuczek Dec., ¶ 5.) The CSC is staffed by Allstate Insurance Company employees who spend some of their time performing services on behalf of AFIC when responding to AFIC policy holder calls. (*Id.*, ¶ 4.) The CSC's are located in Charlotte, North Carolina; Hudson; Ohio; Dallas; Texas; and St. Petersburg Florida. (Kuczek Dec., ¶ 3.)

Approximately 25-30% of all claims regarding policies issued by Allstate-related entities are initially reported to an insurance agent or through the internet. (*Id.*, ¶ 6.) The remaining 70-75% of all claims regarding policies issued by Allstate-related entities are reported by policyholders calling a CSC. (Kuczek Dec., ¶ 9.) The bulk of these inbound calls are routed to CSCs located in Ohio and North Carolina. (*Id.*) Texas CSC handles inbound phone calls for policyholders who do not speak English. (*Id.*)

Once a claim is reported (in a non-mass catastrophe situation), it is assigned to an Allstate employee in Florida who inspects and adjusts the claim unless it is eligible for express handling, in which case it is handled from start to finish by Allstate's Property Express office in Ohio. (*Id.*, ¶¶ 9, 10.)

However, catastrophe-related claims, such as hurricane claims, are handled differently. In the event of a catastrophe like a hurricane, AFIC retains independent adjusters from the Texas-based Pilot Catastrophic Services, Inc. ("Pilot"), as well as Allstate employees from the Illinois-based Allstate National Catastrophe Team (the "CAT Team"), to inspect and adjust these claims. (Tracey Dec., ¶ 4.) Approximately 90% of adjusters who participated in adjusting the 2004 hurricanes claims (whether from Pilot or the CAT Team) were non-Florida residents. (*Id.*) In 2004 approximately 90% of the claims dollars AFIC paid out were hurricane related. (Stouffer Dec., ¶ 23.)

From 2000-2003, Allstate did not pay out any claims dollars on 95% or more of the policies in force at the end of those years. (*Id.* at ¶ 22.) The number of claims increased significantly in 2004 due to the hurricanes. (*Id.*)

## F. AFIC's Investment Strategies Are Overseen from Illinois.

Investment of premiums is an important part of the insurance business, and a significant source of AFIC's profits. (Stouffer Dec., ¶ 19.) For example, in 2004, AFIC's Annual Report showed a net underwriting income loss of approximately $1.24 5 billion, but a net income gain in investment income of $ 115 million; (Stouffer Dec., Exh. B, at p. 4.) In 2003, investment income represented approximately 27% of the AFIC's overall net income. (*Id.,* Exh. A, at p. 4.) AFIC's investment strategies are developed in Illinois. (*Id.*, ¶ 19)

## G. AFIC Regulatory Compliance Work Occurs In Illinois.

The insurance industry is highly regulated. An important part of AFIC's business activities consist of tracking state law filing requirements and assuring compliance with all such requirements. (Stouffer Dec., ¶ 13.) All of AFIC's regulatory and compliance work is done from Northbrook, Illinois. (*Id.*) All required filings with the Florida Department of State and the Illinois Department of Insurance, including AFIC's annual reports, are prepared in Northbrook, Illinois. (*Id.*, ¶ 12.) All such filings list AFIC's "principal address" or "principal place of business" as Northbrook, Illinois. (*Id.*; Exhs. A, B.) AFIC's 2004 Annual Statement, filed with the Florida Department of Insurance, lists Illinois as the primary location of AFIC's books and records, as well as AFIC's state of domicile. (*Id.,* ¶ 5; Exh. B.)

## ARGUMENT

AFIC removed this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"). AFIC is an Illinois corporation with its PPB located in Illinois; the named plaintiffs are citizens of Florida. Jurisdiction is conferred upon this Court under 28 U.S.C. §1332, as amended by CAFA, because there is diversity of citizenship between AFIC, a citizen of Illinois, and several members of the putative class, who are citizens of Florida, and the aggregate amount in

controversy with regard to the putative class is in excess of $5 million. *See* 28 U.S.C. § 1332 (d).
Plaintiffs concede that the amount in controversy satisfies the aggregate federal jurisdictional minimum of $5 million. (Pls. Motion, p. 6, fn. 3.) If AFIC's PPB is located in Illinois, jurisdiction is proper in this Court.[2] But plaintiffs' argue that under the "total activities" test employed by the Eleventh Circuit in determining a corporation's PPB, AFIC's PPB is in Florida, not Illinois, and hence remand is required. As shown more fully below, AFIC's PPB is not in Florida, and hence diversity jurisdiction exists under CAFA, mandating denial of the Motion to Remand.

**I.     AFIC's Business Activities Occur In Several States.**

Plaintiffs correctly note that the "total activity" test "incorporates both the 'place of activities' test (focus on production or sales activities), and the 'nerve center' test (emphasis on the locus of the managerial and policymaking functions of the corporation.)." *Vareka Invs., N.V. v. Am. Inv. Props. Inc.,* 724 F.2d 907, 910 (11th Cir. 1984), cited in Pls. Motion at p. 7. Plaintiffs assert that "as a general rule, 'the principal place of business of a corporation with its corporate headquarters in one state and ***its single activity*** in another will generally be in the state of its operations.'" (Pls. Motion, p. 11, quoting *J.A. Olson Co. v. City of Winona,* 818 F.2d 401, 409-19 (5th Cir. 1987) (emphasis supplied).) Although plaintiffs acknowledge that "at least some if not most managerial and policymaking functions are carried out in Illinois," they argue that Florida is AFIC's PPB because "all" of AFIC's production and sales (place of activities)

---

[2] Under the CAFA amendments, if more than one-third of the putative class members were citizens of states other than Florida, it would not matter whether AFIC's PPB was in Illinois or Florida, because diversity jurisdiction would still be deemed to exist. *See* 28 U.S.C. §§1332(d)(4)(A), 1332(d)(4)(B). However, there is no convenient way to determine the precise number of non-Floridian class members. Over 44,000, or approximately 8% of AFIC's policyholders, have non-Florida billing addresses, (Stouffer Dec., ¶ 24.) It is likely that numerous other AFIC policyholders who have Florida billing addresses are nonetheless citizens of other states. However, without a policy by policy canvas, it is not possible to confirm this assumption. Accordingly, AFIC is not contending that more than one-third of the putative class members are citizens of states other than Florida.

functions are Florida-based." (Pls. Motion, p. 9.) Plaintiffs' argument is incorrect, and the "general rule" they rely upon is inapplicable, because AFIC's business does not involve a "single activity" located in Florida.

As an initial matter, plaintiffs appear to confuse AFIC's business "presence" in Florida with its "citizenship." Some of AFIC's "production and sales…functions" undeniably take place in Florida. But the fact that AFIC transacts business in Florida does not mean that it is a citizen of that state. "The mere fact that a company conducts business in a state does not transform that company into a citizen of a state. Citizenship is not simply presence. It is not created when a person or entity crosses state lines to enter into a contract or conduct business within the state." *Epic Technical Services, Inc. v. Williams Field Services-Gulf Coast Co., L.P.,* Case No. 02-1397, 2002 WL 31427377, at *1 (E.D. La. Oct. 29, 2002) (denying motion to remand).

Plaintiffs also appear to misunderstand how an insurance company "produces" and "sells" insurance policies. AFIC's business activities necessary to support the "production" function are not limited to Florida. A vital part of the "production process" of an insurance policy involves the development of underwriting guidelines to determine which risks will be accepted, the determination of pricing levels at which the policy will be sold, and compliance with rate filing requirements that will allow the company to sell those policies at the desired premium levels. AFIC's underwriting guidelines, pricing policies, and rate filings and other regulatory compliance work is generated in, and directed from Illinois -- not Florida. (Stouffer Dec. ¶¶ 13, 14.) Once those activities have been accomplished, AFIC's insurance policies are actually printed in Illinois to be sent to Florida. (*Id.*, ¶ 20.) No policies are printed in Florida.

Similarly, the "selling" of the policy involves activities in several states. To the extent that AFIC advertising to attract customers, such advertisements are bought and placed from

Northbrook, Illinois. (AFIC Interrogatory Resp. No. 15.) AFIC policyholders may have purchased their policies in one of three ways: (a) from an insurance agent located in Florida (b) through an Allstate CIC 800 number, which is answered by Allstate employees acting on behalf of AFIC in Illinois and North Carolina, or answered by third-party vendors acting on AFIC's behalf in California or India, or (c) over the internet. (Stouffer Dec. ¶ 10; Wojtaszek Dec., ¶¶ 7, 9.) To the extent that AFIC policyholders want to change their policies, add endorsements, or simply ask questions about their policies, they can do so either by contacting their insurance agent or by using the CICs. (Wojtaszek Dec., ¶ 7.) AFIC policyholders send their premium payments to addresses in Dallas, Texas. (Stouffer Dec., ¶ 21.) AFIC maintains bank accounts in North Carolina, New York and California, and has no bank accounts or payrolls in Florida. (AFIC Interrogatory Response Nos. 16, 17.) Decisions concerning how such premium dollars will be invested, an important source of AFIC's income, are made in Illinois. (Stouffer Dec., ¶ 19.)

Plaintiffs' assertion that "given the staggering number of claims [AFIC] handled during 2004, one must inescapably conclude that thousands of adjusters worked on its behalf within Florida in order to assess and process those claims" again over simplifies the business activities that occur to support the claims process. (Pls. Motion, p. 9, fn. 4.) AFIC's claims handling processes and procedures are developed in Illinois -- not Florida. (Stouffer Dec., ¶ 17.) Most claims are initially reported through an Allstate CSC 800 number staffed by Allstate employees acting on behalf of AFIC in either North Carolina, Ohio, Texas or Florida. (Kuczek Dec., ¶ 7.) The 2004 hurricane claims were handled on behalf of AFIC by either Pilot adjusters, or adjusters from the CAT Team; in either case, 90% of the adjusters were not residents of Florida. (Tracey Dec., ¶ 4.)

In short, although AFIC insures property in Florida, it is wrong to say that its "single activity" occurs in Florida. AFIC's business activities occur in several locations, including Illinois, North Carolina, Ohio, Texas, California and even India. Accordingly, the "general rule" plaintiffs seek to invoke has no application here.

II. **Because AFIC's Activities Are "Far Flung," The Location of Its "Never Center" Is More Significant in Establishing Its PPB Because It Is "Essentially Run From There."**

As plaintiffs correctly observe, the Eleventh Circuit has recognized that "the 'nerve center' of a corporation with 'far flung operations' generally will be determinative of [its] PPB." (Pls. Motion, pp. 11-12, citing *Sweat Pea Marine, Ltd. v. APJ Marine, Inc.*, 2005 WL 1349314, at *3 (11th Cir. 2005).) As shown above, AFIC's business activities are "far flung." Its "nerve center" is located at its corporate headquarters located in Northbrook, Illinois.

AFIC is incorporated in Illinois. Pursuant to Illinois statute, it is required to, and does, maintain its PPB in Illinois. 215 ILCS 5/8. Eight of nine of the Board of Directors, and fourteen of its fifteen officers, reside in Illinois. (AFIC Response No. 10; Stouffer Dec., ¶ 4.) Over the past two years, eleven of thirteen Board meetings have occurred in Illinois. (Stouffer Dec., ¶4.) AFIC's corporate records are maintained in Illinois, and its corporate tax returns list Illinois as its address. (Gardner Dec., ¶¶ 4, 7.) AFIC's underwriting guidelines, pricing decisions, investment strategies, and claims handling policies and procedures are developed in Northbrook, Illinois. (Stouffer Dec., ¶¶ 14, 15, 17) Accordingly, AFIC's "nerve center" is located in Northbrook, Illinois.

The former Fifth Circuit's decision in *Toms, v. Country Quality Meats, Inc.,* 610 F.2d 313 (5th Cir. 1980)[3] (cited in Pls. Motion at p. 7) is illustrative. In that case, plaintiffs brought an

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the

action in federal court against multiple defendants for damages allegedly suffered as a result of purchasing and consuming poisoned meat. Plaintiffs were residents of Georgia. The trial court dismissed the action for want of diversity jurisdiction because it held that one of the defendant corporations, Country Quality Meats, Inc., had its PPB in Georgia where it operated a store, had employees, maintained bank accounts and paid local property taxes. *Toms*, 610 F.2d at 315. On appeal, the former Fifth Circuit reversed, finding the trial court's ruling clearly erroneous. Employing the "total activity" test, the former Fifth Circuit held:

> While it is true that Georgia was where this corporation came into contact with the public, where the daily activities of the corporation occurred, and where its tangible assets were located, we find that the activity which occurred in Texas was more significant because Country Quality **was essentially run from there**.
>
> …Although it is not determinative for diversity purposes, it is nevertheless significant that the income tax forms listed [Texas] as the return address for Country Quality. Accounting functions for Country Quality were performed out of executive offices in Texas including computation of payroll checks. Insurance policies were purchased [there]. **The facts show that operating control of Country Quality clearly came from…Texas where the major business policy decisions were made**. 610 F.2d at 315-316 (emphasis supplied).

Similarly here, while the property that is being insured is located in Florida, the activity that occurs in Illinois -- including the development of underwriting, pricing and claims handling policies, investment strategies, and regulatory compliance -- is far more significant because AFIC is "essentially run from there." There is no logically reason why diversity jurisdiction would be found present in *Toms*, but not here. *Toms* teaches that Illinois is the place "where the major business policy decisions were made," and it is, therefore, AFIC's principal place of business.

---

close of business on September 30, 1981. *Toms*, which was decided on January 24, 1980, is, therefore, binding precedent in the Eleventh Circuit.

*Bivens v. Equitable Life Assurance Soc'y of the U.S.*, No. 99-1722 CIVI 17B, at *1, No. 2000 WL 343178, (M.D. Fla., March 17, 2000) also demonstrates this point. There, plaintiff had filed an action against the defendant insurance company in Florida state court. The defendant removed, alleging that its PPB was in New York. Plaintiff moved to remand, arguing that because of defendant's level of sales activities in Florida, its PPB was in Florida. *Bivens*, 2000 WL 343178, at *2. In denying the motion to remand, the District Court used the "total activity" test and found that New York was the defendant's PPB:

> A review of all of Defendant's corporate activity shows that the managerial and policy-making functions are carried out in New York; its state of incorporation is in the state of New York; and the physical location of Defendant's corporate offices are in New York. In sum, Defendant has its greatest contacts with the people of New York. *Bivens*, 2000 WL 343178, at*3.

*See also Vareka,* 724 F.2d at 910 (affirming finding that plaintiff's PPB was in Ecuador the location from where the company was run, notwithstanding the fact that its asset, an office building, was located in Florida).

### III. The Cases Relied Upon By Plaintiffs Do Not Support Their Argument That AFIC's PPB Is Located In Florida.

Relying upon cases like *J.A. Olson Co. v. City of Winona,* 818 F.2d 401 (5th Cir. 1987), plaintiffs mistakenly argue that AFIC's PPB should be Florida because although its corporate nerve center is in Illinois, its "single activity" is allegedly in Florida. (Pls. Motion, pp. 11-12.) But *J.A. Olson Co.*'s holding that a corporation, whose "sole activity" was the operation of a single manufacturing plant, had its PPB in the state where that plant was located, not another state where its corporate headquarters was located, has no application to the facts presented here. As shown above, AFIC's business activities occur in several locations, including Illinois, Florida, North Carolina, Ohio, California, Texas and India, with its significant corporate management occurring in Illinois. Under such circumstances, the place where most of the

corporate policy is developed and key decisions are made is of primary importance in determining AFIC's PPB. *Toms,* 610 F.2d at 315; *J.A. Olson Co.,* 818 F.2d at 411.

The other cases relied upon by plaintiffs similarly do not support their contention that AFIC's PPB is in Florida. To the contrary, they support the proposition that AFIC's PPB is in Illinois. For example, in *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,* 411 F.3d 1242, 1248 (11th Cir. 2005) (cited in Pls. Motion, p. 12), the Eleventh Circuit affirmed the district court's finding that Sweet Pea's PPB was in the Cayman Islands based upon Sweet Pea's mailing address, location of corporate records, residence of directors, location of annual meetings, and county of "flagging" of the vessel at issue, finding that such "nerve-center"-related facts were entitled to "greater significance" because Sweet Pea's activities were "far flung…that cannot be confined to one location." As shown above, AFIC's activities are "far-flung" and "cannot be confined to one location." AFIC's mailing address, location of corporate records, residence of directors (8 out of 9), location of annual meetings (11 out of 13) and state of incorporation are all Illinois, supporting AFIC's position that its PPB is in Illinois, not Florida.

*TKI, Inc. v. Nichols Research Corp.* 191 F. Supp. 2d. 1307 (M.D. Ala. 2002) (cited at Pls. Motion, p. 12) does not support plaintiffs' argument that AFIC's PPB is in Florida. In that case, Alabama plaintiffs filed an action in state court against two corporate defendants and an individual defendant who was a resident of Alabama. The corporate defendants removed the case to federal court, alleging that the individual defendant had been fraudulently joined, and that there was complete diversity of citizenship between the corporate defendants and plaintiffs. Plaintiffs moved to remand the case, and the District Court denied the motion. *Id.* at 1309. The question of whether there was complete diversity between the plaintiffs and the corporate

defendants turned upon the location of one of the corporate defendant's PPB; if its PPB was in Alabama, then diversity was lacking. *Id.* at 1316.

Applying the "total activities" test, the District Court found that the corporate defendant's PPB was not in Alabama. Among the facts supporting that finding were: (1) the defendant's tax returns and other state filings reflected a California address; (2) three out of four of the directors resided in California; (3) six of out the eleven officers resided in California; (3) many major corporate managerial and business policy decisions were made in California. *Id.* at 1317-1320. Relying upon *Toms,* 610 F.2d at 315-316, the District Court observed that the former Fifth Circuit had found it "significant, although not determinative that income tax forms list the return address of a parent entity," as well as, among other things, "where major business policy decisions were made…." *Id.* at 1320. Similar factors that led the *TKI, Inc.* court to deny remand dictate a similar result here: although AFIC's business activities occur in a variety of states, AFIC's tax returns and state filings all list a Northbrook, Illinois address, eight out of nine of the directors reside in Illinois, all but one officer reside in Illinois, and major corporate policies concerning underwriting, pricing, investment strategies, regulatory compliance and claims handling procedures are made in Illinois.

Finally, *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3d Cir. 1960) (cited at Pls. Motion, p. 12) provides no support for plaintiffs' argument that AFIC's PPB is in Florida. In *Kelly,* the Third Circuit affirmed a District Court finding that U.S. Steel's PPB was located in Pennsylvania. The Court found the following factors to weigh in favor of a Pennsylvania PPB, (1) the Operations Policy Committee sat and conducted the business of the corporation in Pennsylvania; (2) corporate policy, subject to Board of Directors review, was made by the Operations Policy Committee; (3) seven executive vice-presidents, 16 of 17 administrative vice

presidents and 22 out of 25 vice presidents were headquartered in Pennsylvania. *Id.* at 854. The Third Circuit concluded that "[a]ll this points to us the conclusion that business by way of activities is centered [in] Pennsylvania…" *Id.* Similar factors here point to the conclusion that AFIC's PPB is located in Illinois: AFIC's Board of Directors ordinarily meets in Illinois, all but one of its officers reside in Illinois, and important corporate policies and functions occur in Illinois.

## CONCLUSION

AFIC is an Illinois corporation that is required by Illinois statute to maintain its PPB in Illinois. Its tax returns and state filings list an Illinois address as its principal address. While the property it insures is located in Florida, the business activities necessary to support its business occur in several states, but are managed and directed from its corporate headquarters in Illinois. Under the "total activities" test, AFIC's PPB is located in Illinois. Plaintiffs' Motion to Remand should be denied.

Dated: July 27, 2005                    ALLSTATE FLORIDIAN INSURANCE COMPANY

                                        By:  /s/ Harold R. Mardenborough, Jr.
                                             Harold R. Mardenborough, Jr.
                                             Christopher Barkas
                                             McFarlain & Cassedy, P.A.
                                             305 South Gadsden Street
                                             Tallahassee, Florida 32301
                                             (850) 222-2107

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been served by e-filing to Matthew D. Schultz, 316 South Baylen Street, Suite 600, Pensacola, Florida 32501; and by United States Mail to Harvey J. Harkness, 270 N. Palafox Street, Pensacola, Florida 32502 on this 27th day of July, 2005.

                                                                  /s/ Harold R. Mardenborough, Jr.
                                                                   Harold R. Mardenborough, Jr.

11914255\V-2