UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFREY M. MOLL and MONA
LYNN PIGG,

    Plaintiffs,

vs.

CLASS REPRESENTATION
Case No:  3:05-CV-00160-RV-MD

ALLSTATE FLORIDIAN
INSURANCE COMPANY,

    Defendant.
_____/

## PLAINTIFFS' AUTHORIZED REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND

**I. Overview.**

This is a putative class action arising from residential hurricane claims handled by Defendant Allstate Floridian during 2004. Plaintiffs moved to remand the case on grounds that Allstate Floridian has failed to meet its burden of proving that its principal place of business ("PPB") is in Florida (rather than Illinois as it contends), so that this Court lacks diversity jurisdiction and remand is mandatory under the provisions of 28 U.S.C. §§ 1332(d)(4)(A) and (B).

Allstate Floridian's responses to jurisdictional discovery and its response to the remand motion reveal, among other things, the following:

- Allstate Floridian is a subsidiary of a subsidiary of Allstate Insurance Company, an Illinois corporation. But Allstate Floridian is separately capitalized. (Def. Ans. to Jursid. Interrogs. No. 1.)

- Allstate Floridian insures only property located within the State of Florida. (Def. Ans. to Jursid. Interrogs. No. 3 & 4.)

- All of Allstate Floridian's gross profits and losses relate to property located within the State of Florida. (Def. Ans. to Jursid. Interrogs. No. 6.)

- In 2004, Allstate Floridian opened 307,753 claims and distributed $1,138,575, 896 in claims payments. Every claim payment related to property located within the State of Florida. (Def. Ans. to Jursid. Interrogs. No. 1.)

- Allstate Floridian advertises only in Florida. (Def. Ans. to Jursid. Interrogs. No. 15.)

- Allstate Floridian is not reinsured by any other Allstate entity. (Def. Ans. to Jursid. Interrogs. No. 11.) But Allstate Floridian reinsures every other Allstate entity operating in Florida while reinsuring no property located outside of Florida. (Def. Ans. to Jursid. Interrogs. No. 5 & 20.)

- At least *some* of Allstate Floridian's managerial and policymaking ("nerve center") functions occur in Florida. (Mtn. to Remand at 8-9.)

- "Some of AFIC's 'production and sales . . . functions' undeniably take place in Florida." (Def. Resp. to Mtn. to Remand at 9.)

In response to Plaintiffs' jurisdictional discovery requests, Allstate Floridian offered a laconic seven-page response. In responding to the motion to remand, however, it produced a host of affidavits and attachments totaling nearly 300 pages. Despite this effort, however, it has not overcome the presumption in favor of remand. The reason is straightforward: Allstate Floridian's response is geared

almost entirely toward proving not its activities, but those of its grandparent corporation Allstate Insurance Company. As a matter of black-letter law, the activities of a parent or grandparent corporation (Allstate Insurance Company) are not to be considered in determining the PPB of its subsidiary (Allstate Floridian). Allstate Floridian has provided the Court with a record of Allstate Insurance Company's activities outside of Florida and its "far flung" operations, but it has not proved that *Allstate Floridian* does not maintain its PPB in Florida. Allstate Floridian cannot carry its burden to prove diversity jurisdiction by referring to the activities of an altogether separate corporation. This is demonstrated by a brief overview of the governing law as applied to Allstate Floridian's response to Plaintiffs' remand motion.

**II. As a general rule, a subsidiary is considered to have its own PPB separate from a controlling parent corporation.**

A parent corporation and its subsidiaries are treated as having separate citizenship for diversity purposes:

> The general rule . . . is that "in a suit involving a subsidiary corporation, the court looks to the state of incorporation and principal place of business of the subsidiary, not its parent. The only recognized exception to this rule is where the subsidiary is the alter ego of the parent corporation.

*Danjaq v. Pathe Comms. Corp.*, 979 F.2d 772, 775 (9th Cir. 1992) (dicta). *See generally* C. Wright, A. Miller & E. Cooper, 13B *Fed. Practice & Procedure* § 3625 (2005) ("The general rule . . . is that a subsidiary corporation has its own

place of business for purposes of diversity jurisdiction, unless it is merely an 'alter ego' or agent of the parent corporation.").[1] This rule holds true even where the parent corporation owns all of the stock of a subsidiary and controls the subsidiary's operations, *see Needham v. Wedtech (USA), Inc.*, 918 F. Supp. 353, 357 (N.D. Okla 1996), and "even if the separateness is perhaps only formal . . . .". *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 7 (1st Cir. 1988). *See also Hungarian Broad. Corp. v. Coleman & Cos. Secs., Inc.*, 1996 WL 374173, at *1 (S.D.N.Y. July 2, 1996) ("[I]n all but exceptional circumstances, the principal place of business of a corporation . . . is determined without reference to the business of parent corporations . . . .").[2]

---

[1] Allstate Floridian has not argued that it is an alter ego of Allstate Insurance Company (or any other Allstate entity).

[2] This rule makes sense if the Court considers the purpose of the original amendment to the diversity statute to provide for citizenship where a corporation maintains its PPB. That purpose was "to provide a separate forum for out-of-State citizens against the prejudices of local courts and local juries by making available to them the benefits and safeguards of the Federal courts." S. Rep. No. 1830, 85th Congr., 2d Sess. 4 (1958) (*quoted in Danjaq*, 979 F.2d at 774); *see also J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 404 (5th Cir. 1990) ("Diversity jurisdiction exists for the purpose of providing a federal forum for out-of-state litigants where they are free from prejudice in favor of a local litigant."). Allstate Floridian, which maintains a substantial and exclusively Floridian presence—having paid more than one billion dollars in Florida claims last year—could hardly fear being viewed by a Florida jury as an "outsider." It probably would come as a shock for the average juror to learn that Allstate Floridian is anything other than its name suggests—a Florida-based insurance company. *See, e.g.*, Wright & Miller, *supra* § 3625 ("[S]uits involving the corporation often will stem from its contacts with the public. By deeming the corporation to be a citizen of the state where its public contacts are most numerous, and thus where litigation will take place most frequently, the basic goal of the 1958 amendment of Section 1332—to reduce the federal court diversity caseload—will be carried out most effectively.").

## III. Allstate Floridian's response to Plaintiffs' motion details the activities of Allstate Insurance Company—an altogether different corporation.

Defendant begins with the premise that "an insurance company's 'total activities' do not necessarily take place where the insured property is located." (Def. Resp. at 1.) It concedes at the outset that "some sales activities and claims handling occur in Florida," while proceeding to explain that its business activities occur "in numerous locations." In a deft move, however, Defendant shifts the focus from activities it carries out to activities carried out by its grandparent corporation, Allstate Insurance Company.[3]

Allstate Floridian filed five affidavits in support of its response, every one of which was by an Allstate Insurance Company employee (two of whom also serve with Allstate Floridian). The activities described in the affidavits are not those of Allstate Floridian, they are those of Allstate Insurance Company.

For example, Mr. Matthew Wojtaszek—a senior manager with Allstate Insurance Company—affies that the widely dispersed Claims Service Centers ("CSCs") and Customer Information Centers ("CICs") are "set up by Allstate" and

---

[3] Defendant spills a lot of ink describing how the bulk of its managerial activities occur in Northbrook, Illinois, a point that Plaintiffs conceded in their motion (though *some* of Allstate Floridian's managerial acts indisputably are carried out in Florida). (Def. Resp. at 3-4, 5, 7 and reiterated throughout the "Argument".) Defendant then attempts to characterize its operations as "far flung" in hopes the Court will apply the general rule that the PPB of a "far flung" corporation is its "nerve center." However, the "far flung" operations Defendant describes are those of its grandparent entity, Allstate Insurance Company, and not its own.

that "Allstate" has four CSCs nationwide employing the equivalent of nearly 1,000 full-time "Allstate" employees.[4] (Wojtaszek Aff. ¶¶ 2-4.) Mr. Wojtaszek did not review Allstate Floridian records in order to draft his affidavit; he reviewed the business records of Allstate Insurance Company. (*Id.* ¶ 5, 6, 8, 10.) Mr. Wojtaszek's affidavit tells us a great deal about Allstate Insurance Company's "far flung" customer service and claims centers, but the only thing it tells us about Allstate Floridian is that it operates no such centers of its own.[5]

Mr. Paul Tracey's affidavit reveals that he is a field operations manager for Allstate Insurance Company who has several years of experience with "Allstate's CAT Team"—a team comprised of approximately "400 Allstate employees . . . ." (Tracey Aff. ¶ 2.) The Allstate CAT team members who adjusted hurricane claims in Florida "were Allstate employees." (*Id.* ¶ 4.) Again, we get a picture of Allstate Insurance Company's operations, but the affidavit says nothing of Allstate Floridian other than that it does not maintain its own CAT team (and of course that all of the claims adjusted on its behalf pertained to Florida properties).

---

[4] The term "Allstate" as used throughout the response and attached affidavits refers not to Defendant but to its grandparent corporation Allstate Insurance Company or other separate Allstate entities. *See e.g.*, Wojtaszek Aff. ¶ 2; Tracey Aff. ¶ 2; Gardner Aff. ¶ 2 (referring to independent affiliate "The Allstate Corporation" as "Allstate"); Kuczek Aff. ¶ 2.

[5] Interesting questions on this point would be whether Allstate Insurance Company provides these services exclusively for Allstate Floridian and whether Allstate Insurance Company has ever cited these activities as a basis for finding that it, Allstate Insurance Company, is "far flung." It would be intriguing to learn how many different Allstate entities have claimed the same activities as proof of that given entity's "far flung" nature.

The affidavit of Ms. Karen Gardner, an assistant VP with Allstate Insurance Company and a VP with Allstate Floridian, says only that Allstate Insurance Company files a consolidated federal tax return that includes Allstate Floridian—a fact that is not dispositive of the issue before this Court. *See generally* Wright & Miller, *supra* § 3625 ("Notably, although the Internal Revenue Service regulations require that corporate income tax returns be filed where a corporation has its principal place of business, this factor is not determinative for purposes of federal diversity jurisdiction.").

Ms. Ann Kuczek is a senior training instructor in one of Allstate Insurance Company's claims service centers. (Kuczek Aff. ¶ 1.) Her affidavit reiterates Mr. Wojtaszek's inasmuch as it describes Allstate Insurance Company's elaborate claims service and the efforts of "Allstate employees" without saying anything directly about Allstate Floridian other than that it does not operate these centers. (*Id.* ¶¶ 5, 6b.)

Finally there is the affidavit of Mr. Myron Ellsworth Stouffer, Jr., an assistant VP with Allstate Insurance Company (as well as a VP and board member for Allstate Floridian). Mr. Stouffer's affidavit basically reiterates the managerial or "nerve center" information already known to Plaintiffs by virtue of Allstate Floridian's discovery responses as outlined in the motion for remand. One interesting point is derived from paragraphs 7-9, which suggest that Allstate

Floridian "engages in a multitude of business activities" that, as it turns out, actually are "engaged in" by employees of Allstate Insurance Company rather than those of Allstate Floridian, which has no employees.

In short, Allstate Floridian's response to the remand motion tells us very little about Allstate Floridian's operations while telling us a great deal about those of Allstate Insurance Company. Allstate Floridian has garnered a significant share of the homeowners insurance market in Florida, having adjusted more than 300,000 claims worth nearly $1.2 billion dollars last year alone. All of its profits and losses are related to Florida properties. Yet to read its response to the motion to remand, one would think it has no contacts with Florida other than that "some" of its production and sales functions "take place in Florida." (Def. Resp. to Mtn. to Remand at 9.) The response is long on descriptions of Allstate Insurance Company's operations (and Allstate Floridian's managerial operations in Illinois), but modestly describes its multi-billion dollar Florida-only enterprise as a "mere presence" in Florida. It is far more than that and, at bottom, it strains credulity for a company who insures only Florida properties, who collected more than $429 million premium dollars from Floridians last year, (Stouffer Aff. Ex. B at 4), and who adjusted more than 300,000 Florida claims, to protest that it has no meaningful connection to Florida.

## IV. Conclusion

The starting point for the Court's analysis is that remand is appropriate unless the party invoking federal jurisdiction proves otherwise. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). If the Court harbors any doubt about the existence of diversity jurisdiction, remand is required. *Id.* The activities of Allstate Insurance Company may not be considered in determining Allstate Floridian's PPB. Yet Allstate Floridian has created little more than just such a record. Plaintiffs must in fairness concede that, based upon available evidence, the bulk of Allstate Floridian's managerial decisions occur in Illinois. It is undisputed that *some* of Allstate Floridian's managerial decisions occur in Florida. Defendant also confesses that "some" of its production and sales activities "undeniably" occur in Florida, but it says nothing more on the subject, choosing instead to focus on the operations of Allstate Insurance Company.

What the record indisputably reveals is a separately capitalized Allstate entity who advertises *only* in Florida ("Home Office: St. Petersburg"), who insures *only* property located within Florida, whose profits and losses relate to *only* to property located within the State of Florida, and who adjusted more than 300,000 *Florida* claims last year resulting in nearly $1.2 billion dollars in claims payments relating *only* to Florida properties. Allstate Floridian's references to its managerial functions in Illinois and its grandparent company's operations cannot overcome

9

the presumption that it is a Florida company or that this Florida-specific action ought to be remanded to the courts of the State of Florida where it initially was brought.

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished by notice of electronic filing to Harold R. Mardenborough, Jr., McFarlain & Cassedy, P.A., 305 S. Gadsden St., Tallahassee, FL 32301 (hal@mcfarlain.com).

This the 2nd day of August, 2005.

s/Matthew D. Schultz
MATTHEW D. SCHULTZ
Fla. Bar No. 640328
Levin, Papantonio, Thomas, Mitchell,
   Echsner & Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 436-61412
Email: mschultz@levinlaw.com
Attorneys for Plaintiffs
