IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFREY M. MOLL and
MONA LYNN PIGG

      Plaintiffs,

v.                                    Case No.: 3:05-cv-160/RV/MD

ALLSTATE FLORIDIAN
INSURANCE COMPANY,

      Defendant.

_____/

## ORDER

Pending is plaintiffs' motion to remand. (Doc. 18).

In this putative class-action, the named plaintiffs Jeffrey M. Moll and Mona Lynn Pigg sue Defendant Allstate Floridian Insurance Company, alleging breach of contract and breach of an implied covenant of good faith with respect to residential hurricane windstorm damage claims in 2004. The plaintiffs filed this action in the Circuit Court for Escambia County, Florida. Defendant removed the action to this court based on diversity jurisdiction under Title 28, United States Code, Section 1332(a). The plaintiffs now move to remand, arguing that diversity jurisdiction does not exist because Defendant's principal place of business is Florida. This court held oral argument on the remand motion on August 10, 2005.

**I.**      **FACTUAL BACKGROUND**

This is a putative class action brought by two plaintiffs who own residential property in Florida. Their properties, and well as the residential properties of all the putative class members, are insured by Defendant Allstate Floridian Insurance

Company ("AFIC").  This action arises out of damage sustained to the plaintiffs' property as a result of four hurricanes which struck the state of Florida in 2004. Plaintiffs allege that AFIC intentionally underestimated the value of their claims.

After the plaintiffs filed the case in state court, AFIC removed the action to this Court claiming that diversity jurisdiction exists.  AFIC is incorporated in the state of Illinois, and it asserts that its principal place of business is also Illinois. Plaintiffs contend that AFIC's principal place of business is Florida, and requests that the case be remanded because diversity is lacking.

## II. DISCUSSION

### A. Standard of Review

Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court. See 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987).  AFIC, as the party removing this action to federal court, has the burden of establishing federal jurisdiction.  See Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242 (11th Cir. 2005)(citing McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002)).  Because the removal statutes are strictly construed against removal, all doubts about removal must be resolved in favor of remand.  See Id.; Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

### B. AFIC's Principal Place of Business

The sole basis for federal subject matter jurisdiction in this case is premised upon diversity of citizenship as set forth in Title 28, United States Codes, Section

1332, and as amended by the Class Action Fairness Act of 2005 ("CAFA").[1]  As amended by CAFA, class-action diversity jurisdiction exists if the amount in controversy exceeds $5,000,000 and any member of the class of plaintiffs is a citizen of a state different from any defendant.  Moreover, Section 1332(d)(4)(B), directs that a court *shall* decline to exercise diversity jurisdiction in a class action where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  Plaintiffs concede that the amount-in-controversy exceeds the jurisdictional requirement, but the plaintiffs contend that as they are citizens of Florida, and presumably more than two-thirds of the class members will be homeowners and citizens of Florida, diversity jurisdiction does not exist because AFIC, the sole defendant, is also a citizen of Florida.

A corporation is deemed to be a citizen of both its state of incorporation and the state in which it maintains its principal place of business.  28 U.S.C. §1332(c)(1).   Thus, for diversity purposes, the corporation must not only be incorporated in another state, but also conduct its principal business in another state.[2]  In this case, it is undisputed that AFIC is incorporated in Illinois, but the

---

[1] The recently enacted CAFA was undoubtedly intended to expand federal diversity jurisdiction over multi-state class actions.  However, the CAFA still incorporates the corporate citizenship requirements of Title 28, United States Code, Section 1332(c)(1), and it preserves  state courts' jurisdiction over class actions that predominantly involve plaintiffs and defendants in the same state.

[2] Prior to 1958, a corporation was deemed to be a citizen only of the state of its incorporation.  In 1958, Congress amended Section 1332 to create dual citizenship for corporations.  The amendment was designed to remedy the abuse caused when an almost entirely local corporation was able to invoke diversity jurisdiction merely because it had been incorporated in another state.  See Freeman v. Northwest Acceptance Corp., 754 F.2d 553, 558-59 (5th Cir. 1985).
   In enacting the 1958 amendment, Congress explained:
    "The underlying purpose of diversity of citizenship legislation . . . is to provide a separate forum for out-of-State citizens against the prejudices

plaintiffs contend that AFIC's principal place of business is Florida. AFIC, on the other hand, argues that its principal place of business is Illinois. Thus, the sole issue regarding remand is whether AFIC's principal place of business is in Florida or somewhere else.

The determination of a corporation's principal place of business for establishing diversity jurisdiction is a question of fact. Sweet Pea Marine, Ltd. v. APJ Marine, Inc., supra, 411 F.3d at 1247 (citing Vareka Invs., N.V. v. American Inv. Properties, Inc., 724 F.2d 907, 910 (11th Cir. 1984). Moreover, a corporation has one and only one principal place of business. J.A. Olson Co. v. City of Winona, Miss., 818 F.2d 401, 406 (5th Cir. 1987). However, for purposes of establishing diversity jurisdiction, the defendant does not need to prove that its principal place of business is in any particular state; rather, the defendant need only prove that its principal place of business is in a state other than Florida. Sweet Pea Marine, Ltd., supra, 411 F.3d at 1248 n.2.

In the Eleventh Circuit, a corporation's principal place of business is determined by examining the "total activities" of the corporation. Id. at 1247 (citing Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead, 162 F.3d 1101, 1106 (11th Cir. 1998)). The "total activities" standard requires a court to consider, among other things, the location of the corporation's "nerve center" and its "place of activities." The two inquiries are not mutually exclusive, but rather both considerations should be equally weighed on a case-by-case basis, to determine whether a corporation's "nerve center" or the "place of activities" is more significant in a particular case. In other words, "the ultimate question is not which test to apply, but rather which

---

of local courts and local juries by making available to them the benefits and safeguards of the Federal courts. Whatever the effectiveness of this rule, it was never intended to extend to local corporations which, because of a legal fiction, are considered citizens of another State." S. Rep. No. 1830, 85th Cong., 2d Sess., reprinted in (1958) U.S. Code Cong. & Ad. News 3099, 3101-02.

consideration, on the basis of the totality of the facts, predominates." J.A. Olson Co. v. City of Winona, Miss., supra, 818 F.2d at 406.

The evaluation of a corporation's nerve center is a rather straightforward inquiry, looking at the locus of the corporation's managerial and policymaking functions. The plaintiffs and AFIC agree that AFIC's nerve center is located in Illinois. AFIC was formed in 1996 as a separate entity to insure only real propery in Florida after a series of hurricanes in 1995 had resulted in serious windstorm losses for many insurance companies operating in the state. AFIC is a wholly-owned subsidiary of Allstate Holdings, LLC, a Delaware Corporation, which in turn, is a wholly-owned subsidiary of Allstate Insurance Company ("Allstate"), an Illinois Corporation. Eight out of nine of the members of AFIC's board of directors reside in Illinois. One resides in Florida. AFIC has fifteen officers, all residing outside of Florida, except AFIC's president who has his office in St. Petersburg, Florida. In the years 2003 and 2004, the board of directors met eleven times in Northbrook, Illinois, and only twice in Florida. Further, all of the company directives and guidelines of AFIC's business are generated in Illinois; all of the policies and procedures regarding claims handling and coverage issues are generated in Northbrook, Illinois; and all of AFIC's policymaking functions are carried out in Illinois.

The "place of activities" prong involves a pragmatic focus on the day-to-day activities of the corporate life. In examining the activities of a corporation, the court should consider the number of locations where the corporation carries on its activities, and the importance of the particular activity to the corporate purpose and to the corporation as a whole. J.A. Olson Co. v. City of Winona, Miss., supra, 818 F.2d at 406. Significant indicators of an activity's importance include the proportionate share of corporate assets, both of money and time, devoted to the activity and the proportion of its income that the corporation derives from that

activity.  Id.

AFIC offers property insurance solely for property located within the State of Florida.  Accordingly, almost all of AFIC's annual gross revenue, except for revenue obtained as a result of investments,[3] derives from the premiums paid to it for insurance on property located in Florida.  It is a major insurer of Florida property.  In 2004, AFIC opened 307,753 claims in Florida and paid out over a billion dollars in claim settlements.  Allstate's website contains a disclaimer noting that "In Florida, property insurance products are sold only by AFIC and Allstate Floridian Indemnity Company."  Allstate Floridian Indemnity Company, as well as Encompass Floridian Indemnity Company and Encompass Floridian Insurance Company, are all subsidiaries of AFIC, and AFIC separately reinsures these subsidiaries.  The website also lists AFIC's "home office" as being in St. Petersburg, Florida.  The St. Petersburg office is an administrative office which is housed within Allstate's regional office.

AFIC itself does not have employees in Florida or elsewhere.  Instead, AFIC utilizes Allstate employees to perform services on its behalf pursuant to an allocation agreement between the two corporations.  Per the terms of the agreement, the costs associated with Allstate employees who provide services for AFIC will be allocated to, and paid by, AFIC.  In Florida, Allstate employs exclusive sales agents who sell property insurance on AFIC's behalf.  Further, the St. Petersburg office is manned by Allstate employees performing services on AFIC's behalf.

AFIC customers can report a claim in one of three ways: (1) by reporting their claim directly to their insurance agent; (2) by reporting their claim through Allstate's website; or (3) by calling Allstate's 1-800 number.  Approximately

---

[3] AFIC, like most insurance companies, depends upon investment revenue to supplement the revenue from premiums and allow it to remain profitable over time. Investment revenue for AFIC was approximately 25% of its total revenue.

25–30% of all claims are initially reported to an agent or through the website. When an AFIC customer reports a claim to an insurance agent, of course, the activity will normally be located in Florida, because that is where the insured properties are located. When an AFIC customer reports a claim through the website, the vast majority of these claims are routed to a claims service center in Florida.[4]

Approximately 70–75% of claims are initially reported by customers using the 1-800 number. In handling claims, AFIC utilizes four claims service centers set up and employed by Allstate, and located in Charlotte, North Carolina; Hudson, Ohio; Dallas, Texas; or St. Petersburg, Florida. Between January 1 and March 31, 2005, approximately 15% of the calls to report a claim that originated in Florida were handled by the St. Petersburg center, while the remaining calls were handled by the claims service centers located out of state. Regardless of where the initial claims report takes place, however, claims originating from Florida will then be assigned to an Allstate claims office in Florida for further handling on behalf of AFIC.

AFIC also utilizes customer information centers set up and employed by its parent corporation. These customer information centers, located in North Carolina, Illinois, California, and India, handle calls to Allstate's 1-800 number regarding sales, endorsement changes, billing and payment issues, or general customer service issues.

Losses relating to the 2004 hurricanes in Florida were adjusted on behalf of AFIC by Allstate's National Catastrophe Team (CAT) and by Pilot Catastrophe Services, Inc., ("Pilot"), an independent adjusting company based in Texas and retained to assist in the adjustment process. Approximately 90% of the CAT team

---

[4] The Florida claims service center for the Allstate companies handles the vast majority of website claims reports nationwide, not just in Florida.

members and the Pilot adjusters came to Florida from other states to adjust the 2004 Florida claims.  Because Allstate did not have a permanent CAT office in Florida, after the 2004 hurricanes, Allstate, on AFIC's behalf, set up a temporary CAT office in Florida to deal with the large number of property claims.  While the adjusters were originally from out-of-state, of course, they were all required to come to Florida and adjust the claims in Florida, while working on AFIC's behalf.

Despite the fact that AFIC insures only property located in Florida, AFIC's corporate books and records are maintained in Illinois.  All of AFIC's filings with the Florida and the Illinois Department of Insurance are prepared in Illinois, and all of AFIC's regulatory and compliance work is completed in Illinois.  Further, AFIC's underwriting standards are promulgated in Illinois, as well as decisions regarding pricing and rates on the Florida policies.  AFIC's federal tax returns are prepared and filed in Illinois, and AFIC's address on the tax return is listed as its headquarter's address in Northbrook, Illinois.  AFIC's policyholders are required to send their premium payments to an address in Dallas, Texas.  AFIC also maintains no bank accounts in Florida, but instead has its accounts in North Carolina, New York, and California.

After considering a corporation's total activities, the analysis should determine whether the corporation's "nerve center" or its "place of activities" predominates.  There are certain guidelines which may generally apply in determining which of these two factors is more significant in a particular case:  (1) the principal place of business of a far-flung corporation will generally be its nerve center; (2) the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally in the state of the former; and (3) the principal place of business of a corporation with its corporate headquarters in one state and its single operations activity in another will generally be in the state

of its operations. J.A. Olson Co., supra, 818 F.2d at 406. (internal citations omitted); See Bivens v. Equitable Life Assurance Society of the United States, 2000 WL 343178 (M.D. FL. 2000).

The "total activities" test has been very ably discussed and applied in several reported authoritative decisions. See e.g., Sweet Pea Marine, Ltd. v. APJ Marine, Inc., supra, 411 F.3d 1242; Toms v. Country Quality Meats Inc., 610 F.2d 313 (5th Cir. 1980); See, also, Bivens v. Equitable Life Assurance Society of the United States, supra, 2000 WL 343178; Mercury Finance Corp. of Alabama v. Aetna Casualty and Surety Co. of Illinois, 900 F. Supp. 390 (M.D. Ala 1995). One consistent principle is that the "total activities" test is not intended to be mechanically applied. See Toms v. Country Quality Meats, Inc., supra, 610 F.2d at 316 ("The 'total activity' test is not an equation that can provide a simple answer to the question of a corporation's principal place of business.") Instead, each activity and relevant factor, including the corporation's purpose, its management, and the location of its business activities, must be examined in conjunction with each other so that the court, in the end, can step back and take a comprehensive and realistic look at the corporation as a whole, i.e. view the bigger picture, and make the ultimate determination of which state is central and predominant in the corporation's activities. This determination must be made by considering not only where individual activities take place, but also the overall significance of the activities to the corporation as a whole. See e.g., J.A. Olson Co., supra, 818 F.2d at 411 (explaining that a court should consider where the most significant or predominant part of the corporation's business takes place based on the nature of the corporation's business and the significance of the activities to the corporation's purpose).

The nature of the insurance business is inherently different from an industrial business in which production of a tangible product may dominate over the sales or

financing aspects. Instead, the insurance business is a multifaceted service industry, and includes major activities such as underwriting and risk analysis, pricing, investments, banking, marketing, and policymaking, which can be, and in this case are, carried out in different states. However, within the insurance business there are also many different areas and types of insurance. Significantly, AFIC confines its business to only real property insurance, and within that context, only covering property located within the state of Florida. Unlike health insurance or automobile insurance, for example, which are inherently mobile because the person or thing insured may move from state to state, property insurance is specifically situs focused. Therefore, unlike a multiple-lines insurance company, the nature of AFIC's insurance business has a particular emphasis and a very strong connection to the state of Florida and its citizens. All of AFIC's insured property will presumably remain in Florida, and its policy decisions will affect only Florida property owners.

The defendant relies heavily on Toms v. Country Quality Meats, Inc., supra, 610 F.2d 313, to support its contention that AFIC is essentially run from Illinois, and therefore, its nerve center is more significant. In Toms, the defendant owned and operated a store, called Country Quality Meats, Inc., located exclusively in Georgia, but it was run by its parent corporation located in Texas. The former Fifth Circuit held that it was not a Georgia citizen, explaining: "While it is true that Georgia was where this corporation came into contact with the public, where the daily activities of the corporation occurred, and where its tangible assets were located, we find that the activity which occurred in Texas was more significant because Country Quality was essentially run from there." Id. at 315.

However, there are several significant factual distinctions between this case and the Toms case. First, the Fifth Circuit characterized Country Quality Meats, Inc., as a "small company." It was just a sales outlet and part of a larger unified

system of over sixty similar corporations set up in the wholesale and retail meat business across the country. These companies operated as one far-flung business, with common offices, directors and stockholders. In actuality, Country Quality Meats was merely one store among over sixty similar stores in a nationwide meat distribution system. By contrast, AFIC, with overall operations located state-wide in Florida, rather than in one city, and which represents almost ten percent of the overall property insurance market in Florida, could hardly be characterized as a small company or a small part of a nationwide business. AFIC's activities and its overall contacts in Florida are much more significant than those of the single sales outlet addressed in Toms.

Secondly, the Toms Court noted that the "nerve center" test was more appropriate because the highest official of Country Quality was vested with so little managerial authority that he essentially "wore an apron," or he "was primarily engaged in meat cutting activities." Toms, supra, 610 F.2d at 315 n.4. In this case, it is undisputed that the bulk of AFIC's policy decisions are made in Northbrook, Illinois, but AFIC's president, who presumably does not "wear an apron," is located in St. Petersburg, Florida. AFIC maintains an administrative office in St. Petersburg and thus has some in-state management of its extensive Florida sales and service activities.

Further, here, the significance of the activities which occur in Florida weigh in favor of finding Florida to be AFIC's principal place of business. Clearly, AFIC's activities are not confined to a single state. Nevertheless, acknowledging that AFIC conducts business activities in more than one state does not mean that its activities are "far-flung." A corporation will generally be considered "far-flung" when the corporation is engaged in activities "dispersed to the point that no place in which the corporation conducts operations or activities can be denoted principal." J.A. Olson Co., supra, at 407. See also Tosco Corp. v. Communities

for a Better Env't, 236 F.3d 495, 500 (9th Cir. 2001)(The nerve center test should only be applied "if no state contains a substantial predominance of the corporation's business activities.").

Here, a realistic look at AFIC's corporate activities, apart and separate from Allstate's activities, show that Florida can be denoted as AFIC's principal place of business. For instance, all of the individual sales agents working on AFIC's behalf are located in Florida. While AFIC does not directly employ anyone in Florida, it should be noted that in determining a corporation's principal place of business, the courts look to substance over form. See J.A. Olson Co., supra, 818 F.2d at 412; Toms v. Country Quality Meats, Inc., supra, 610 F.2d at 315. These sales agents must really be considered to be AFIC's employees.

Similarly, the Allstate claims adjusters, as well as the Pilot claims adjusters, who handled the plaintiffs' claims for property damage related to the 2004 hurricanes hailed from different states, but they carried out their activities on AFIC's behalf solely in Florida. In fact, Allstate was required to set up a catastrophe team base in Florida while they handled AFIC's claims in 2004 related to the hurricanes. AFIC downplays the significance of these activities in Florida, arguing that its investment, underwriting, and corporate management activities are equally important in furthering its corporate purpose. There is no doubt that these are important activities, but they really are only supporting activities. The predominant part of AFIC's corporate purpose, as evidenced by the fact that AFIC derives all of its profits and losses from the insurance policies sold only in Florida, is to sell and service insurance on real property located within the State of Florida. Thus, AFIC's principal business activities are focused on its insureds and their insured property, all located solely in Florida.

AFIC is a separate entity from Allstate, its parent. Limiting liability is a recognized advantage of the corporate form of doing business. There are

undoubtedly sound business reasons underlying Allstate's decision to confine all its Florida property insurance policies, including their associated risks, into a separate and distinct corporation. However, this decision also carries with it the practicality that for all intents and purposes, AFIC is essentially focused solely on Florida, and it derives all of its revenue, except the revenue made from investments, from insurance policies sold within the state of Florida.

Finally, as an equitable matter, there is no reason to believe that AFIC will be treated unfairly in Florida when it has made the decision to operate only in Florida and insure only Florida properties. Since the underlying purpose of diversity jurisdiction is to protect out-of-state residents from the prejudice of local state courts, [See Jerguson v. Blue Dot Invs, Inc., 659 F.2d 31, 33 (5th Cir.1981)], diversity jurisdiction should be reserved for parties that are "sufficiently foreign to have a legitimate fear of local prejudice." Bel-Bel Int'l. Corp. v. Cmty. Bank of Homestead, supra, 162 F.3d at 1106-07. AFIC does not have a "substantial indicia" of being a foreign corporation. As many courts have recognized, the need for diversity jurisdiction is lessened when a foreign corporation has substantial visibility in the community. See J.A. Olson Co., supra, 818 F.2d at 411 n.14 (acknowledging the importance of the public contact factor, although not dispositive). Here, AFIC markets itself and advertises only in Florida, insures solely Florida property, and in fact includes the name of Florida in its own corporate name: Allstate Floridian Insurance Company. AFIC's business operations require significant contact with the public in Florida, and it requires sales agents and claims adjusters located state-wide in Florida to carry out its operations. The public undoubtedly perceives it to be a Florida business.

Based on all of these considerations, I find that AFIC's principal place of business is located in Florida. Accordingly, AFIC must be considered a citizen of Florida for diversity purposes. Since the named plaintiffs, as well as the large

majority of any putative class members, are Florida citizens, diversity jurisdiction does not exist in this case.

### III.    CONCLUSION

For the foregoing reasons, the plaintiffs' motion (doc. 18) is GRANTED, and this case is hereby REMANDED to the Circuit Court for Escambia County, Florida.

DONE and ORDERED this 16th day of August, 2005.

*/s/ Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**